IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY MUSTAFA LIFE WILLIAMS, : | |
| : | CIVIL ACTION |
| **Plaintiff,** : | |
| : | |
| v.        : | NO.  13-4926 |
| : | |
| WARDEN DALE MEISEL, <u>et</u> <u>al.</u>, : | |
| : | |
| **Defendants.** : | |

Goldberg, J.                                                                                                September 24, 2014

### MEMORANDUM OPINION

Plaintiff, Anthony Mustafa Life Williams, proceeding pro se, initiated this civil rights action pursuant to 42 U.S.C. § 1983 (hereinafter "§ 1983") against the State of Pennsylvania, the City of Allentown, the Lehigh County Prison, the Lehigh County District Attorney, and several prison officials at the Lehigh County Prison in Allentown, PA.  Plaintiff's claims include allegations of illegal confinement, unsanitary conditions in the prison, wrongful deprivation of property and denial of access to the courts.

Before the court is Defendants' motion to dismiss.  For the following reasons, I will grant Defendants' motion.

### I.    FACTUAL AND PROCEDURAL HISTORY[1]

On June 27, 2012, Plaintiff was arrested by the Allentown Police Department and charged with burglary, criminal trespass, theft, receiving stolen property, simple assault, and resisting arrest.  He was incarcerated at the Lehigh County Prison as he awaited trial.  After a

---

[1] When deciding a motion to dismiss for failure to state a claim brought pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court must assume the veracity of all well-pleaded facts found in the complaint.  Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  We assume that all facts found in the October 31, 2013 amended complaint and the February 18, 2014 second amended complaint are true.

1

preliminary hearing on December 3, 2012, he was granted permission to proceed pro se and represent himself at trial.

As a pre-trial detainee, Plaintiff filed several prison grievance forms. On November 6, 2012, he complained of mold in the showers. (Inmate Grievance No. 12-0320, attached to doc. no. 24.) On November 28, 2012, his form was processed, and he was assured that the prison was "working on plans to restore the showers to a better state of clean[liness]." (Id.)

Plaintiff also filed grievances regarding his access to the law library and alleged interference with his legal mail. (Inmate Grievance Nos. 12-0331, 13-0115, 13-0141, 13-0148, 13-0248, 13-0227, attached to doc. no. 24.) He complained that that there was no way to shepardize cases in the law library computer, that the prison did not provide someone who was trained in the law to help with legal research, and that his legal mail had been opened by workers in the mailroom outside of his presence. (Id.) The prison responded to the grievances by assuring him that he could shepardize cases using the law library computer, that they were meeting their legal obligations in providing him with access to the law library, and that he was given his mail in the same condition in which they received it. (Id.)

On November 12, 2013, Plaintiff was found guilty of burglary, criminal trespass, theft, and receiving stolen property. He was found not guilty of simple assault and resisting arrest. Plaintiff is currently incarcerated at the Lehigh County Prison pursuant to those convictions.

Proceeding in forma pauperis, Plaintiff filed his amended complaint on October 31, 2013. He brought claims for illegal confinement, unsanitary conditions in the prison, wrongful deprivation of property, and denial of access to the courts against the State of Pennsylvania, the City of Allentown, the Lehigh County Prison, Lehigh County District Attorney James Martin,

2

Warden Dale Meisel, Deputy Warden of Treatment Donate[2], Inmate Accountant Chris Miller, Mailroom Supervisor John or Jane Doe, Mailroom Worker John or Jane Doe, Treatment Supervisor Carol Sommers, and the Allentown Police Department.

By my order of December 12, 2013, I dismissed Plaintiff's claims against the State of Pennsylvania on Eleventh Amendment grounds.  See doc. no. 11.  I also found that:

- The claims against the Lehigh County Prison could not proceed "because a prison is not a person subject to suit under the civil rights laws";

- The claims against the District Attorney must be dismissed because "prosecutors enjoy absolute immunity from liability for money damages under § 1983 for any action taken within the scope of their duties as prosecutors . . . [and] [t]here is nothing in th[e] complaint that suggests that [the prosecutor] acted outside of the scope of his prosecutorial duties";

- The allegations against the City of Allentown and the Allentown Police Department did not state a claim for relief because, in that Plaintiff alleged that he was being illegally confined and prosecuted, he "d[id] not state that his conviction has been reversed or otherwise invalidated" as is required to recover damages under such a claim; and

- Plaintiff's allegations of interference with legal mail against John or Jane Doe Mailroom Supervisor and Mailroom Worker must also be dismissed.  (This dismissal was without prejudice for Plaintiff to reassert if and when he could amend his complaint to identify such defendants and the manner in which they violated his constitutional rights).

Id.

On January 6, 2014, Plaintiff filed a "Motion to Change Judgment per Rule 60B or Rule 59," which I construed as a motion to amend the complaint.  In that motion, Plaintiff asked that he be allowed to amend his complaint to bring claims of illegal confinement against the Allentown Police Department and the City of Allentown.  He argued that while he was found guilty of some charges, he was found "not guilty of resisting arrest, which is a favorable

---

[2] In his amended complaint, Plaintiff identifies the first name of Deputy Warden of Treatment Donate as "Janine."  On the docket, however, the Deputy of Warden of Treatment is identified as "J. Donate."  In their brief, Defendants only refer to the Deputy Warden of Treatment by the last name, and do not provide a first name.

termination." See doc. no. 17.  On January 28, 2014, I dismissed that motion on the basis that any amendment of Plaintiff's claim for illegal confinement would be futile in that Plaintiff "acknowledge[d] that he was found guilty of certain crimes and is being imprisoned pursuant to that conviction." See doc. no. 19.

On February 18, 2014 Plaintiff filed a second amended complaint addressing his allegations for interference with legal mail against John or Jane Doe Mailroom Supervisor and Mailroom Worker.[3]  Plaintiff's remaining allegations therefore include claims of unsanitary conditions in the prison, wrongful deprivation of property and denial of access to the courts.  The remaining Defendants are Warden Dale Meisel, Deputy Warden of Treatment Donate, Inmate Accountant Chris Miller, and Treatment Supervisor Carol Sommers.  These remaining Defendants filed a motion to dismiss, and Plaintiff has filed a response.  The motion is now fully briefed and ready for disposition.

## II.     STANDARD OF REVIEW

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  The plausibility standard requires more than a "sheer possibility that a defendant has acted unlawfully."  Id.  To determine the sufficiency of a complaint under Twombly and Iqbal, the Court must take the following three steps: (1) the Court must "tak[e] note of the elements a plaintiff must plead to state a claim;" (2) the court should identify the allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth;" and (3) "where there are well-pleaded factual allegations, a court should

---

[3] I have construed the second amended complaint to supplement and not supersede his amended complaint.  I have considered them both here.

4

assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) (citations omitted).

Because plaintiff is pro se, the allegations in the complaint must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers."  Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).  Further, a pro se complaint "can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Estelle, 429 U.S. at 106 (quotations and citations omitted).

### III.  LEGAL ANALYSIS

Pursuant to § 1983, a plaintiff must demonstrate that his or her federal constitutional or statutory rights were violated by a person acting under the color of state law.  See, e.g., Kost v. Kozakiewicz, 1 F.3d 176, 184 (3d Cir. 1993).  It is well established that "liability cannot be predicated solely on the operation of *respondeat superior*." Rode v. Dellarcipete, 845 F.2d 1195, 1208 (3d Cir. 1988).  Each named defendant must be shown to be personally involved in the events which underlie the claim.  Id.  "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."  Id.

Plaintiff appears to claim that (1) the conditions of confinement violate his constitutional rights; (2) Defendant Miller deprived him of property in violation of the Fourteenth Amendment's Due Process Clause; and (3) Defendants Meisel, Donate, Sommers, and John and Jane Doe Mailroom Worker and Mailroom Supervisor violated his constitutional right to access the courts.  I will discuss his claims in turn.

A. **<u>Conditions of Confinement</u>**

Plaintiff alleges that unsanitary conditions in the prison amount to a "violation of the U.S. constitution." (Am. Compl. ¶ 36.) He cites to the failure of Defendant Meisel, the warden, Defendant Donate, the deputy warden of treatment, and Defendant Sommers, the treatment supervisor, to "correct" the "shower conditions," in that "the showers on every unit has a mold problem . . . [which] has the potential to cause long term effects. They have come and tried to clean it, but that hasn't solved the problem." (<u>Id.</u> at ¶¶ 25, 36.)

I will construe Plaintiff's argument as an allegation that the conditions of confinement violate his constitutional rights. Since Plaintiff's claims arose when he was a pretrial detainee, we analyze his conditions of confinement claim under the Fourteenth Amendment's Due Process clause, as opposed to "the Eighth Amendment's Cruel and Unusual Punishments Clause[, which] does not apply until 'after sentence and conviction.'" *Hubbard v. Taylor*, 399 F.3d 150, 164 (3d Cir. 2005) (quoting *Graham v. Connor*, 490 U.S. 386, 392 n.6 (1989)). "Under the Fourteenth Amendment, a pretrial detainee is entitled 'at a minimum, [to] no less protection' than a sentenced inmate is entitled to under the Eighth Amendment." <u>Fuentes v. Wagner</u>, 206 F.3d 335, 344 (3d Cir. 2000) (quoting <u>Colburn v. Upper Darby Township</u>, 838 F.2d 663, 668 (3d Cir. 1988)). Since the legal standards for the Eighth Amendment and the Fourteenth Amendment analyses are similar, I will look to the more established Eighth Amendment jurisprudence in guiding my evaluation of Plaintiff's claim. <u>See</u> <u>Tapp v. Proto</u>, 404 F. App'x 563, 566-67 (3d Cir. 2010) (citing and considering Eighth Amendment case law where evaluating a conditions of confinement claim for a pretrial detainee under the Due Process Clause).

Conditions of confinement violate the constitutional prohibition on cruel and unusual punishment if they satisfy two criteria. First, the conditions "must be, objectively, sufficiently

6

serious" such that the "prison official's act or omission [] result[s] in the denial of the minimal civilized measure of life's necessities." Farmer v. Brennan, 511 U.S. 825, 834 (1970) (internal citations and quotations omitted).  Second, the official responsible for these conditions must exhibit a "sufficiently culpable state of mind" which "[i]n prison-conditions cases [] is one of deliberate indifference to inmate health or safety." Id. (internal quotations omitted).

      The facts alleged in Plaintiff's complaint could not give rise to relief on this claim.  With respect to the first element, only those deprivations which, viewed "objectively," deny the "minimal civilized measure of life's necessities," implicate the Eighth Amendment.  Id. Nonetheless, constitutionally acceptable prison conditions generally require that an inmate not be "expose[d] to [contaminants] that pose an unreasonable risk of serious damage to future health." Helling v. McKinney, 509 U.S. 25, 35 (1993) (tobacco smoke).  Mold in the showers does not however violate this constitutional prohibition. See Peterkin v. Jeffes, 661 F. Supp. 895, 915 (E.D. Pa. 1987) (finding that mold and lime deposits in showers were unpleasant but, given that they posed no real health hazard, did not violate the Eighth Amendment); Forde v. Fischer, 2009 WL 5174560, *4 (D.N.J. Dec. 16, 2009) (stating that plaintiff's "allegation of mold on three of his cell walls [] fails to implicate the Eighth Amendment"); Meadows v. Fulton County Jail, 2008 WL 818055, *2 n.1 (N.D. Ga. Mar. 25, 2008) (finding that the plaintiff, an inmate who "complain[ed] of mold in or on the showers," and in light of the inconclusiveness of a report issued by the Centers for Disease Control on the long-term health effects of mold, failed to state a claim under the Eighth Amendment where he did not indicate that "he is a person who might experience a severe or serious reaction" to mold).

With respect to the second element of a conditions of confinement claim, Plaintiff's allegations in his amended complaint also fail to show "deliberate indifference to inmate health and safety" on the part of Defendants Meisel, Donate, and Sommers. Farmer, 511 U.S. at 834. In fact, Plaintiff's statement that "[t]hey have come and tried to clean [the mold], but that hasn't solved the problem," belies his contention that prison officials have been deliberately indifferent. (Am. Compl. ¶ 25.)   This claim is dismissed.

### B. Deprivation of Property

In his amended complaint, Plaintiff alleges that "[i]nmate accountant Chris Miller remove and continue to remove funds from my account that I have a property interest in, with no caring in violation of my constitutional rights." (Am. Compl. ¶ 38.)  We observe that this is the only reference to Miller in the amended complaints, and that Plaintiff does not allege that any other prison officials knew of and acquiesced in the alleged deprivation of Plaintiff's constitutional rights.

I will construe Plaintiff's argument as an allegation under § 1983 that he was deprived of property without due process, in violation of the Due Process Clause of the Fourteenth Amendment. See, e.g., Hudson v. Palmer, 468 U.S. 517, 531 (1984) (destruction of prisoner's personal property while an inmate at a state penal institution implicates the Due Process Clause of the Fourteenth Amendment).  I find however that Plaintiff has failed to describe with any specificity the events which he alleges to have violated his constitutional rights.  He does not identify the amount of funds that Defendant Miller removed from his account, nor does he identify the date or even the time period when the funds were removed.  This lack of specificity requires me to dismiss this claim for failure to state a claim upon which relief can be granted. Iqbal, 129 S. Ct. at 1949 (2009).

This claim must also be dismissed on the grounds that Plaintiff has failed to exhaust his administrative remedies. There is no evidence in the record before us to indicate that Plaintiff filed any inmate grievances concerning this allegation of Defendant Miller having misappropriated the inmate funds. See 42 U.S.C. § 19997e(a) ("No action shall be brought with respect to prison conditions under Section 1983 . . . .by a prisoner confined in any [] prison [] until [] administrative remedies are exhausted.").[4] This claim is dismissed.

### C. Constitutional Right of Access to the Courts

Plaintiff alleges that he was denied access to the courts in that Defendants Meisel, Donate, and Sommers "conspired not to provide law library access." (Am. Compl. ¶ 36.) He states that he cannot shepardize cases on the law library computer, and that "[Defendant] Sommers [] takes two weeks or more to send cases and we have no way to sheperdise [sic] them or any other law access other than that." (Id. at ¶ ¶ 13, 29.) Plaintiff further alleges that John or Jane Doe Mailroom Worker and Mailroom Supervisor violated his constitutional right of access to the courts by opening up his legal mail outside his presence. (Second Am. Compl. ¶¶ 1-8.)

"[T]he [First Amendment] right of access to the courts [] rest[s] on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." Christopher v. Harbury, 536 U.S. 403, 415 (2002). Accordingly, the plaintiff must first "identify a nonfrivolous, arguable underlying claim." Id. (internal quotations omitted). The plaintiff must then "describe the official acts frustrating the

---

[4] I note that Plaintiff does not allege that the loss to his property was the result of an established state procedure. He instead alleges that the loss was the result of the independent actions of Defendant Miller. The "unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533 (1984). In this regard, Plaintiff's failure to take advantage of the adminsitrative remedies that were available to him in the prison further supports my conclusion to dismiss his claim.

litigation," and a remedy that may be awarded as recompense but may not be available in a future suit. Id.

    1. **Defendants Meisel, Donate, and Sommers**

Plaintiff fails to plead the first prong of his access to courts claim against Defendants Meisel, Donate, and Sommers. He identifies no underlying claim, let alone an arguably nonfrivolous claim, that he was prevented from bringing on account of his inability to access legal materials. Indeed, during the time period in which he alleges these Defendants to have conspired to deny him access to the law library, he was able to file this lawsuit. See Lynch v. City of Philadelphia, 408 F. App'x 527, 530 (3d Cir. 2011) (finding that the filing of a § 1983 claim in federal court contradicted the denial of access to courts claim); Lewis v. Casey, 518 U.S. 343, 351 (1996) (stating that "prison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'") (quoting Bounds v. Smith, 430 U.S. 817, 825 (1977)). This claim is dismissed against these Defendants.

    2. **Jane or John Doe Mailroom Worker and Supervisor**

By my order of December 12, 2013, I dismissed Plaintiff's claims of interference with legal mail against John or Jane Doe Mailroom Supervisor and Mailroom Worker, but did so without prejudice for Plaintiff to reassert if and when he could amend his complaint to identify such defendants and the manner in which they violated his constitutional rights. See doc. no. 11. In his second amended complaint, Plaintiff alleges that in "March and the first two weeks of April 2013 [he] had legal mail that was clearly marked as such . . . that was open on several occasions. Each time [he] pointed this out [to the correctional officer who gave him the mail] and all stated this is how they obtained it from the mailroom." (Second Am. Compl. ¶ 1.)

10

Plaintiff further alleges that he received legal mail which was already opened on April 22, 2013, May 15, 2013, May 20, 2013, and August 6, 2013. (Id. at ¶¶ 4-7.)

*Gorrell v. Yost*, 2012 WL 3309638 (W.D. Pa. July 28, 2012), summarizes the case law in our Circuit regarding the treatment of inmate mail:

> An inmate's claim based on opening or mishandling of mail is governed by two lines of cases from the Court of Appeals, one dealing with systemic problems, and the other dealing with individual complaints. For official policies that allegedly interfere with mail, *Jones v. Brown*, 461 F.3d 353, 359 (3d Cir. 2006), cert. denied, 549 U.S. 1286 [] (2007), suggests that a blanket practice of opening inmate legal mail outside the presence of the inmate 'impinges upon' the First Amendment . . . . In the absence of the sort of blanket policy at issue in Jones v. Brown [], the settled law is given by Oliver v. Fauver, 118 F.3d 175 (3d Cir. 1997): an inmate has no First Amendment claim for improper opening of mail unless the opening had an adverse impact on the inmate's access to court.

Id. at *2. In his second amended complaint, Plaintiff only levies allegations against the individual mailroom worker and supervisor, and does not challenge an official policy of opening inmate legal mail outside of his presence. See Second Am. Compl. ¶ 2 (stating that "prison policy" is to open legal mail in the presence of the inmate). Accordingly, for his claim to survive, Plaintiff must allege "an adverse impact on [his] access to court." *Gorrell* 2012 WL 3309638 at *2 (citing Oliver v. Fauver, 118 F.3d.). He has not done so.[5] This claim is dismissed.

---

[5] In this regard, we also find relevant the fact that Plaintiff alleges only that mail "from the court," as opposed to from his attorney (he was proceeding pro se in his criminal case at the time), was opened outside his presence. See Guajardo-Palma v. Martinson, 622 F.3d 801, 802-4 (7th Cir. 2010) (Posner, J.) (observing that while communication between an inmate and his attorney is confidential, most "communications [from courts and agencies] are public documents, which the prison officials have as much right to read as the prisoner," and, accordingly, allegations of opening court mail outside of an inmate's presence are less likely to impinge on the constitutional right of access the courts).

### D. <u>CONCLUSION</u>

Because Plaintiff has failed to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6), the above-captioned action will be dismissed.

An appropriate Order follows.